IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT E. LEGITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-081-RAW-GLJ |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant, Robert E. Legitt, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *is not* medically severe, disability benefits are denied. If he *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-eight years old at the time of the administrative hearing (Tr. 120). He completed the tenth grade and has no past relevant work. (Tr. 179, 344). The claimant alleges an inability to work since an amended alleged onset date of June 1, 2018, due to paranoid schizophrenia, depression, mental problems, and a shoulder injury resulting from a motorcycle accident. (Tr. 34, 118).

## Procedural History

On July 15, 2015, the claimant applied for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 15, 2018 (Tr. 12-28). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. (Tr 23). At step two, she determined that the claimant had the severe impairments of major depressive disorder (severe with psychotic features) and a history of substance abuse, as well as the

nonsevere impairments of hepatitis B, hepatitis C, and a left shoulder anterior dislocation. (Tr. 17-18). She found at step three that the claimant did not meet any Listing. (Tr. 18). At step four she found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but only had sufficient memory and concentration to perform simple, routine tasks with only occasional exposure to the general public. (Tr. 19). The ALJ then concluded that although he had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *e.g.*, janitor, laundry worker, and hand packager. (Tr. 21-22).

## Review

The claimant contends that the ALJ erred by failing to properly assess and account for all his limitations in formulating his RFC, specifically impairments involving his diminished mental state and recently injured shoulder. The undersigned Magistrate Judge agrees that the ALJ failed to properly assess claimant's RFC as to his physical impairment and recommends that the decision of the Commissioner be reversed and the case remanded for further proceedings.

The limited medical evidence related to the claimant's injured shoulder was not considered by the ALJ because she refused to hold the record open so that the claimant's representative could submit it. The evidence as to this impairment, made part of the record on appeal, reflects a significant shoulder dislocation and several displaced transverse process fractures as a result of a motorcycle crash on June 10, 2018. (Tr. 43).

The medical evidence as to the claimant's mental impairments begins well before the amended alleged onset date of June 1, 2018. On February 15, 2011, Dr. Theresa Horton,

Ph.D., completed a consultative examination and diagnosed the claimant with schizoaffective disorder (depressed type), noting the claimant's impaired memory and concentration. (Tr. 418-23). Medical records between 2012 and 2015 are sparse, but what records exist reveal a frequently blunted or absent affect, weight variance, mood swings, paranoia, and memory problems. (Tr. 424-25, 454, 459, 566-68). On April 4, 2016, Dr. Broadway diagnosed the claimant with paranoid schizophrenia and depression. (Tr. 443). Three months later, on July 14, 2016, the claimant was admitted to the emergency room for suicidal ideation with a specific plan. The claimant was then admitted to Carl Albert Community Mental Health Center's in-patient program where he stayed for ten days. (Tr. 514). By July 26, 2016, issues with the claimant's mood, suicidal ideation, hallucinations, and paranoid delusions were resolved and he was discharged with a guardedly optimistic prognosis. (Tr. 516).

On June 21, 2017, Jillien Faure, LMFT, completed a Mental Medical Source Statement ("MSS") as to the claimant's mental impairments. She indicated that the claimant had fourteen marked impairments, including the ability to maintain concentration for extended periods and the ability to sustain an ordinary routine without special supervision. She also indicated he had six moderate limitations, including the ability to interact appropriately with the general public. (Tr. 609-12). By the fall of 2017, the claimant was again reporting both audio and visual hallucinations, increased depression, and appeared irritable and anxious. (Tr. 614, 617, 619). And in February 2018, he reported labile mood and waves of depression. (Tr. 628). The claimant did not complain of any

mental health issues during medical appointments in June 2018, the month of his alleged onset date, and the record contains no later evidence as to his mental health impairments.

State reviewing physicians determined initially and upon reconsideration that the claimant could perform simple, repetitive tasks and that he had a limited ability to work with the general public. (Tr. 178, 190). There was no RFC assessment as to his physical impairments, as the claimant was only complaining of non-exertional impairments at that time. (Tr. 170-80, 182-93).

When questioned about his mental impairments at the administrative hearing, the claimant testified that his memory and concentration were very poor. (Tr. 131). He described how he frequently cannot follow what is being said and must ask a speaker to repeat themselves several times. *Id*. The claimant then testified about a recent shoulder injury he received during a motorcycle crash. (Tr. 132). When asked about the nature of the injury, the claimant stated that his left shoulder was knocked out of the socket and all the surrounding muscles and tissue were torn. *Id*. He then testified that he is unable to lift his left arm and suffers pain from the injury every day. (Tr. 132-33). The claimant's representative requested the record be held open for one week to allow him to submit the results of an MRI taken shortly before the hearing, but the ALJ declined. (Tr. 118-19).

In her written opinion, the ALJ initially noted that she had denied the claimant's request to leave the record open and at step two noted the MRI is outstanding and asserted that the injury did not meet the durational requirement but made no further mention of this impairment at any other point in her decision. (Tr. 15, 18). At step four, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence beginning

on June 14, 2017. (Tr. 19-20). She then found that the claimant's statements regarding the intensity, persistence, and limiting effects of his mental impairments were inconsistent with the medical evidence. (Tr. 21). The ALJ noted that, although the claimant reported mood swings and depression about a year prior to his amended alleged onset date, he consistently denied severe depression from March 2018 onward. *Id*. The ALJ also noted that the claimant has not been hospitalized during the year preceding his amended alleged onset date. *Id*. The ALJ did not discuss the claimant's July 15, 2016, hospitalization for suicidal ideation nor any other medical records preceding June 14, 2017, excepting those generated by the state reviewing physicians.

As for the opinion evidence, the ALJ assigned great weight to the state reviewing physicians as to the claimant's mental impairments, finding them consistent with the evidence showing mental symptoms managed with medication, denials of severe depression throughout 2018, and routinely unremarkable mental status examinations. *Id*. The ALJ found the opinion of Jillien Faure, LMFT, unpersuasive as it was unsupported by any records and was inconsistent with the medical evidence considered. (Tr. 21). The ALJ then noted that she reviewed but did not consider a CE from Theresa Horton, Ph.D., as it was completed seven years before the amended alleged onset date. *Id*. She also did not consider the report of the claimant's sister as it was provided on November 4, 2016, and was eighteen months old at the time of the hearing. (Tr. 21, 134). The ALJ then concluded that the claimant was not disabled. (Tr. 21-23).

I.   RFC Analysis of Physical Impairment

The claimant contends that the ALJ erred by refusing to hold the record open to allow into evidence a recently generated MRI despite the fact that the timing of the hearing made it impossible to file the results before the prescribed deadline. 20 C.F.R. § 404.935(a). At step two, the ALJ asserted that the claimant's shoulder injury, briefly noted above, did not meet the durational requirement and was thus nonsevere. (Tr. 18). The MRI, conducted on July 6, 2018, revealed: (i) a massive rotator cuff tear completely torn and retracted supraspinatus and infraspinatus to the 1:00 position with a completely torn subscapularis, (ii) a dislocated biceps tendon, (iii) hypertrophic degenerative change at the AC joint, (iv) significantly narrowed acromiohumeral and coracohumeral spaces, and (v) joint effusion with fluid in the subacromial/subdeltoid bursa. (Tr. 31).

At the hearing, the ALJ denied the claimant's request to hold open the record, stating "I don't normally do that[.]" (Tr. 119). She did not cite to any authority regarding this decision but did explain that the delay would cause her to "forget all about [the claimant's] case." *Id*. The text of 20 C.F.R. § 404.935(b)(3)(iv) provides that evidence not submitted prior to the hearing will be accepted so long as a decision has not yet been issued and the deadline was missed because of unavoidable circumstances and despite the claimant's active and diligent pursuit. *See England v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4478170, at *3 (E.D. Okla. Sept. 14, 2021) (finding reversible error where the ALJ refused to admit into evidence an MRI submitted on the day of the hearing when the claimant acted diligently to secure the evidence). Here, the claimant stated clearly in his appeal brief that the proximity in time between the MRI and the hearing made procuring the results before

the hearing impossible, and acted diligently to secure the evidence and include it in the record. The ALJ's failure to consider this evidence resulted in reversible error. As a result, this case should be remanded for the ALJ to consider the omitted MRI and any impact it may have on the claimant's RFC.

    II.      RFC Analysis of Mental Impairment

Next, the claimant contends that the ALJ based her formulation of the claimant's RFC on only his most symptom-free periods without proper consideration of the longitudinal evidence. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

The claimant's decision to amend his alleged onset date in this case restricted the relevant period to a time with almost no objective medical evidence. (Tr. 675-77). What evidence does exist in no way indicates a mental impairment. *Id*. While a longitudinal evaluation of the evidence can inform the ALJ's analysis of the relevant period, it cannot stand as the basis of a disability determination on its own. *See, e.g., Fisher v. Colvin*, 2017 WL 448590, at *4-5 (D. Utah Feb. 2, 2017) (finding that the ALJ did not err in forming his decision with only those medical records from the relevant period and utilizing earlier records for the limited purpose of establishing context for medical treatment during the relevant period); *see also Hamlin v. Barnhart,* 365 F.3d 1208, 1217 (10th Cir. 2004) (medical evidence beyond the relevant period may be considered to the extent it sheds light on the nature and severity of claimant's condition during the relevant time period). And here, the ALJ *did* consider evidence outside the relevant period. (Tr. 20). However, the claimant has pointed to no medical documentation providing further limitations as to his mental impairments other than his own reports after the amended alleged onset date. Because he points to no evidence other than his own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

III.     Subjective Symptoms Analysis

Finally, the claimant contends that the ALJ improperly evaluated his subjective complaints by failing to conduct a thorough analysis of his credibility. Although recent

regulations have eliminated the use of the term "credibility," the Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second … we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at 3 (October 25, 2017).[3]

Tenth Circuit precedent is similar to the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e.g.*, *Keyes-Zachary*, 695 F.3d at 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

(vii) any other factors concerning functional limitations. See Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at 7-8.

An ALJ is not required to conduct a "formalistic factor-by-factor recitation of evidence[,]" so long as the ALJ sets forth the specific evidence upon which he or she relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801.

Here, the ALJ considered the claimant's daily activities, examples of how the claimant's memory and concentration affect his ability to work, his medication regimen, and his treatment history. (Tr. 20). In considering the treatment claimant received, the ALJ expanded the scope of evidence considered beyond the relevant time period to that within one year of the amended alleged onset date. *Id*. The claimant contends that the ALJ's analysis placed undue weight on non-mental health related medical evidence, instead of those older, more limiting records from mental health professionals. This appears to be made as part of his larger argument that the ALJ erred in her assessment of his RFC. But here, the ALJ specifically addressed all of the claimant's mental health records from June 2017 onwards, resulting in a finding that the claimant *did* have mental impairments requiring certain limitations. The undersigned Magistrate Judge finds that the ALJ set out the appropriate analysis and cited evidence supporting her reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, she gave

clear and specific reasons that were specifically linked to the evidence in the record. The undersigned Magistrate Judge cannot conclude that the ALJ misread the evidence as a whole in her subjective symptoms analysis. *See Casias*, 933 F.2d at 801.

Because the ALJ failed to properly hold the record open as to certain medical evidence related to the claimant's shoulder injury, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence (both mental and physical) in the record. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days from the date of the service. *See* Fed. R. Civ. P. 72(b). Failure to object to the Report and Recommendation within fourteen days will preclude appellate review of this decision by the District Court based on such findings.

**DATED** this 4th day of November, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**